# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Stairs and Rails, : 
          Petitioner : 
: No. 1100 C.D. 2017
v. : 
: Argued: April 11, 2018
Workers' Compensation Appeal : 
Board (Parsons), : 
          Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                          FILED: January 24, 2019

By permission, Valley Stairs and Rails (Employer) petitions for review of the May 16, 2017 order of the Workers' Compensation Appeal Board (Board), which reversed the order of a Workers' Compensation Judge (WCJ) denying the penalty petition of Gary Parsons (Claimant). The issue we address is on what date did Claimant's workers' compensation benefits become payable under section 406.1(d)(6) of the Workers' Compensation Act (Act).[1]

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1(d)(6). This section states:

**(Footnote continued on next page…)**

## Facts and Procedural History

Claimant alleged that he sustained a low back strain while working for Employer on March 27, 2015, and was transported to the hospital by ambulance. Claimant did not return to work that day or any day thereafter. Claimant received full pay from Employer on the date of the injury; however, his final pay stub stated that Claimant was paid seven hours of "COMP TM" at his regular pay rate. (Reproduced Record (R.R.) at 39a.) On April 13, 2015, Employer sent a notice of temporary compensation payable (NTCP), which stated that the injury, a low back strain, occurred on March 27, 2015, and noted that the 90-day period under section 406.1(d)(6) of the Act ran from March 30, 2015, through June 27, 2015. (Finding of Fact (F.F.) No. 1; R.R. at 32a.)

On June 27, 2015, Employer filed a notice of workers' compensation denial, alleging that Claimant failed to give proper notice of his injury and had not suffered any wage loss. On June 28, 2015, Employer filed a notice stopping temporary compensation payable and a notice of worker's compensation denial.[2] The following day, the Bureau of Workers' Compensation (Bureau) issued a notice of conversion of temporary compensation payable pursuant to section 406.1(d)(6) of the

---

**(continued…)**

> If the employer does not file a notice [controverting a claimant's claim] within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable.

77 P.S. §717.1(d)(6).

[2] As the Board noted in its opinion, although these documents listed different dates, "both were deemed filed on June 28, 2015, the date [o]n which they were actually electronically received by the Bureau." (Board's op. at 5 n.4.)

Act, effective June 29, 2015.  On July 13, 2015, Claimant filed a penalty petition, alleging that Employer violated the Act by stopping payment of compensation benefits after the NTCP had converted to a notice of compensation payable (NCP). (R.R. at 4a, 36a, 37a; F.F. Nos. 3, 4.)

At a hearing before a WCJ, Claimant testified that, at some point on the morning of Friday, March 27, 2015, he injured his lower back while sliding a stair across the floor.  (F.F. No. 5.)  Claimant stated that he went to the hospital by ambulance and did not return to work after the injury.  (*Id.*; R.R. at 14a-15a.)  That same day, Claimant indicated that he received paperwork stating he could not return to work, which he presented to Employer by handing it to a coworker, who took it into the building and returned with Claimant's lunch box.[3]  (R.R. at 14a-16a.)  At a subsequent hearing, Claimant submitted his final pay stub, which reflected payment for 64.85 "Regular" hours and 7 hours of "COMP TM."  (R.R. at 39a.)  Additionally, Claimant's first indemnity benefits check was submitted, which showed the first payment covered the period from Monday, March 30, 2015, through Sunday, April 12, 2016.  (F.F. No. 7; R.R. at 40a.)

In her opinion, the WCJ noted that for purposes of the Act, disability is defined as wage loss.  *See  Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 854 (Pa. 2000) (Disability is defined as "the loss of earning power attributable to the work-related injury.")  Because Claimant received his full pay for the date of injury on Friday, March 27, 2015, the WCJ determined that Claimant's disability commenced on Monday, March 30, 2015, the day he began receiving indemnity benefits.  Thus, the WCJ found that Employer's June 29, 2015 notice stopping temporary compensation was filed on the 90th day of

---

[3] This paperwork does not appear in the record of this case.

Claimant's disability[4] and, as such, the notice of conversion was improperly issued by the Bureau and thus void. Based upon those findings, the WCJ concluded that Claimant failed to prove a violation of the Act and denied Claimant's penalty petition. (F.F. Nos. 4, 6-11; Conclusion of Law at 2.)

Claimant appealed to the Board, asserting that the WCJ erred in finding that the first date of disability was March 30, 2015, since his injury rendered him unable to return to work on March 27, 2015. Claimant further argued that the WCJ erred in finding that Employer timely issued the notice stopping temporary compensation, since it was issued on the 93rd day of disability and, accordingly, the Bureau properly issued the notice of conversion.

The Board reversed and, citing this Court's holding in *Galizia v. Workers' Compensation Appeal Board (Woodloch Pines, Inc.)*, 933 A.2d 146 (Pa. Cmwlth. 2007), stated that "the date the 90[-]day period begins on is [sic] the first date that Claimant was entitled to receive disability benefits as a result of the work injury." (Board's op. at 4.) As such, the Board held, "While the WCJ found that Claimant received his full pay from [Employer] for March 27, 2015, the fact [Employer] may have paid Claimant his full wages in lieu of workers' compensation benefits for that day is irrelevant, as he clearly sustained a loss of earning power and did not complete his work day." *Id.* at 6. The Board thus determined that Claimant was eligible for benefits as of March 27, 2015, and the 90-day period ended on June 25, 2015. The Board further found that the NTCP converted to an NCP by operation of law, since Employer did not issue a notice stopping temporary compensation

_____

[4] As the Board notes in its opinion, the first day of disability is excluded from the computation of time, as well as the last day of the 90-day period, June 28, 2015, being that it fell on a Sunday. 1 Pa.C.S. §1908. Thus, the last day of the 90-day period under this calculation, and the final day that Employer could contest Claimant's claim without being deemed to have admitted liability, was June 29, 2015.

4

payable or a denial until June 28, 2015. Consequently, the Board reversed the WCJ's decision and remanded for a determination of the appropriate penalty amount, if any, that should be awarded based upon Employer's violation of the Act.

Employer filed an emergency motion for appellate certification of the Board's order, as well as a request for an immediate stay of the order, which the Board denied by order dated July 13, 2017. The Board also refused to certify its order under 42 Pa.C.S. §702(b) (related to interlocutory appeals by permission). This Court granted Employer's petition for review filed pursuant to the note to Pa. R.A.P. 1311.[5]

## Discussion

We first note the relevant provisions of the Act, which are sections 306(a)(2) and 406.1(d). Section 306(a)(2) states, "Nothing in this act shall require payment of total disability compensation benefits under this clause for any period during which the employe is employed or receiving wages." 77 P.S. §511(2).

Section 406.1 of the Act states,

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall

---

[5] The official note to Pa. R.A.P. 1311 provides:

Where the administrative agency or lower court refuses to amend its order to include the prescribed statement, a petition for review under Chapter 15 of the unappealable order of denial is the proper mode of determining whether the case is so egregious as to justify prerogative appellate correction of the exercise of discretion by the lower tribunal. If the petition for review is granted in such a case, the effect . . . is the same as if a petition for permission to appeal had been filed and granted, and no separate petition for permission to appeal need be filed.

proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. . . .

. . .

(d)

(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department.

. . .

(4) Payments of temporary compensation may continue until such time as the employer decides to controvert the claim.

(5)(i) If the employer ceases making payments pursuant to a notice of temporary compensation payable, a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

(ii) This notice shall advise the claimant, that if the employer is ceasing payment of temporary compensation, that the payment of temporary compensation was not an admission of liability of the employer with respect to the injury subject to the notice of temporary compensation payable, and the employe must file a claim to establish the liability of the employer.

6

(iii) If the employer ceases making payments pursuant to a notice of temporary compensation payable, after complying with this clause, the employer and employe retain all the rights, defenses and obligations with regard to the claim subject to the notice of temporary compensation payable, and the payment of temporary compensation may not be used to support a claim for compensation.

(iv) Payment of temporary compensation shall be considered compensation for purposes of tolling the statute of limitations under section 315.

(6) If the employer does not file a notice under paragraph (5) within the ninety-day period during which temporary compensation is paid or payable, the employer shall be deemed to have admitted liability and the notice of temporary compensation payable shall be converted to a notice of compensation payable.

77 P.S. §717.1 (emphasis added).

On appeal,[6] Employer argues that the first date of disability is the first date that a claimant is out of work for which compensation is payable. Citing section 306(a)(2) of the Act, Employer contends that Claimant was prevented from receiving payment of total disability benefits for the date of injury, since Claimant received his full pay for that day. Employer acknowledges that Claimant's final pay statement indicates that Claimant worked seven hours of "COMP TM"; however, Employer emphasizes that Claimant was paid at the same rate for all hours—specifically

---

[6] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

$14.00. Thus, Employer asserts that because Claimant earned his usual wages on March 27, 2015, the date of injury, he had no loss of earning power and, accordingly, no "disability" as of that date. For the purposes of receiving workers' compensation benefits, "'disability' means loss of earning power, and thus although a claimant may suffer a work-related physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be 'disabled' under the meaning of the Act and will be entitled to receive compensation." *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 638 A.2d 493, 495 (Pa. Cmwlth. 1994).

In response, Claimant directs the Court to section 406.1(d) of the Act, which he asserts "clearly directs that the 90 days in which to timely stop an NTCP runs from the date that compensation was 'payable.'" (Claimant's Brief at 5.) Claimant states that because he was treated for his work injury at the hospital on March 27, 2015, his compensation benefits were not only payable, but paid, because Employer paid for his medical treatment that day according to the NTCP it issued. With regard to his pay on the date of injury, Claimant suggests that the WCJ erred in finding that Claimant received his full pay on the date of injury because the pay stub denotes that time as "COMP TM." Claimant asserts that, even if that pay were to be considered full pay and resulted in no loss of wages, "it would only serve to act as a de facto acceptance of his [injury] since the Employer very clearly continued to pay him after he became disabled and prior to the filing of the April 13, 2015 NTCP." (Claimant's Brief at 10.)

In its reply brief, Employer responds by arguing that the mere fact that it paid for Claimant's medical treatment on the date of injury does not mean that it paid Claimant compensation benefits. Employer asserts that "compensation," which is not defined in the Act, includes only wage loss benefits. In support of this contention, Employer relies upon *Gereyes v. Workers' Compensation Appeal Board (New*

*Knight, Inc.*), 793 A.2d 1017 (Pa. Cmwlth. 2002), and *Thomas Lindstrom Co., Inc. v. Workers' Compensation Appeal Board (Braun)*, 992 A.2d 961 (Pa. Cmwlth. 2010). In *Gereyes*, a claimant was receiving benefits per an NTCP issued May 4, 1999, and on June 28, 1999, the employer issued the final compensation check, which covered the period from June 22 to June 29. On June 29, 1999, the employer issued a notice stopping temporary compensation payable and a denial. This Court ruled that the employer had complied with sections 406.1(d)(5) and (6) of the Act and that the NTCP had not converted into an NCP. *Id.* at 1021. Similarly, in *Thomas Lindstrom Co.*, the Court held that a notice stopping temporary compensation was issued in a timely manner because the last day of the pay period, and not the date of payment, was the relevant date for determining the timeliness of the employer's notice stopping temporary compensation payable to the claimant. 992 A.2d at 969.

Employer asserts "a plain reading of Section 406.1(d) of the Act, as well as the applicable case law, demonstrates that the 90-day period begins on the first day when indemnity benefits are paid or payable, and not the first date when medical benefits are paid or payable." (Employer's Reply Brief at 3.) Thus, Employer contends that the WCJ properly determined that Monday, March 30, 2015, the day Claimant began receiving indemnity benefits, was the date of disability and that, accordingly, Claimant failed to prove a violation of the Act.

In *Galizia*, the case the Board relied upon in reversing the WCJ, the claimant was injured on November 30, 2002, but continued working until January 6, 2003. 933 A.2d at 147. The employer issued an NTCP on February 6, 2003, which commenced payment retroactively on January 31, 2003, and noted that medical documentation supported a disability as of January 31, 2003. *Id.* In March 2003, the employer's insurance company issued the claimant a check to cover the period from January 6 to January 30, 2003. *Id.* at 149. On April 28, 2003, the employer issued a

9

notice stopping temporary compensation payable and a denial, to which the claimant responded with a petition for penalties and a petition to reinstate benefits. *Id.* at 147. The Board held that the triggering date for the 90-day period was January 31, 2003, the date listed in the NTCP. Upon review, our Court reversed and held that January 6, 2003, the date that the claimant stopped working and thus his first date of disability, was the applicable date for the commencement of the 90-day period. We reasoned, "**[T]he words 'paid' and 'payable' in Section 406.1(d)(6) of the Act, 77 P.S. §717.1(d)(6), plainly, clearly, and unambiguously refer to [the c]laimant's first day of disability as the triggering date of the ninety-day period for temporary compensation benefits pursuant to an NTCP**." *Id.* at 152 (emphasis added). We further stated,

> Undeniably, the first day for which [c]laimant received compensation was January 6, 2003, his first day of disability. While he did not actually receive payment on that date, he was entitled to receive benefits as of that date and benefits were "payable" and paid to him commencing that day. Under the Act, [e]mployer could pay [c]laimant up to ninety days of temporary compensation while it investigated the circumstances of Claimant's disability and injury.

*Id.* at 152 (emphasis added).

Hence, under *Galizia*, this Court clarified that the triggering date for the 90 days is the date when a claimant becomes entitled to compensation, irrespective of whether he has received benefits for that day. Critically, however, in this case, Claimant received his full wages on the date he became disabled, *i.e.*, on the day he sustained a loss of earning power due to a work injury. Although *Galizia* clarifies when the 90-day period referenced in section 406.1 of the Act begins, neither the Act, nor our case law, address how, or if, the calculation of time is affected when an employer pays a claimant his full wages on the first day of disability. Section

10

121.15(a) of the Bureau's Regulations (Regulations), however, sheds light on this ambiguity:

> In computing the time when the disability becomes compensable, *the day the injured employee is unable to continue at work by reason of the injury* shall be counted as the first day of disability in the 7 day waiting period.[7] *If the injured employee is paid full wages for the day, shift or turn on which the injury occurred, the following day shall be counted as the first day of disability.* In determining the waiting period or time during which compensation is payable, each calendar day, including Sundays and holidays, shall be counted. In determining the period of disability, seven should be used as a divisor to determine the number, and any part, of the weeks.

34 Pa. Code §121.15(a) (emphasis added).

Interpretation of a statute by an administrative agency, here, the Bureau, by means of its regulations is entitled to great weight unless the regulation is clearly erroneous or inconsistent with the statute under which it was promulgated. *See Garner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 888 A.2d 758, 767 (Pa. 2005). Although there is no specific regulation pertaining to computation of the 90-day period, because calculation of the first date of disability must be done consistently, we defer to the Bureau's interpretation expressed in section 121.15 that payment is to be made on the date the claimant is unable to continue work by reason of injury unless he is paid full pages for the day. Hence, we hold that disability is considered to commence on the day following the injury when a claimant is paid his full wages for the day, shift, or turn on which the injury occurred.

On application of section 121.15 of the Regulations here, it is clear that Claimant became entitled to receive benefits on the first day he suffered a loss of

---

[7] Under section 306(e) of the Act, no compensation shall be allowed for the first seven days after disability begins unless the disability lasts 14 days or more. 77 P.S. §514.

earning power, which was on the morning of March 27, 2015, when Claimant was injured, transported to the hospital, and did not return to work. This was the day that Claimant was "unable to continue at work by reason of the injury." 34 Pa. Code §121.15(a). Thus, under *Galizia*, the triggering date for the 90-day period would have been March 27, 2015, since that was the date that Claimant became entitled to receive benefits.

Crucially, however, regardless of the way that Employer classified the monetary payment on the pay stub, we must apply the qualifying language which appears in the Regulations regarding payment of wages. Here, Claimant received his full wages on March 27 and, as such, section 121.15(a) of the Regulations directs that the first date of disability—and thus the first day of the 90-day period—began the following day. Since Claimant did not work on weekends, "the following day" under section 121.15(a) was Monday, March 30, 2015, as listed in NTCP. 34 Pa. Code §121.15(a). Thus, the 90-day period began on Monday, March 30, 2015, and ended on June 29, 2015. Because Employer filed its notice stopping temporary compensation payable and denial on June 28, 2015, both were timely issued and the notice of conversion issued by the Bureau was void.

Notably, in *Galizia*, we addressed the issue of the first date of disability as it pertained to the facts of that case but, because there was no issue presented as to that claimant receiving payment on his first date of disability, we had no occasion to address application of the Regulations. In the present matter, we apply *Galizia*'s holding but, as this case presents a matter of first impression, we additionally consider the implications of 121.15(a) of the Regulations as it pertains to the specific facts of this case.

Having determined that Employer timely contested liability for Claimant's injury, we need not address Employer's remaining arguments.

## Conclusion

In conclusion, although the Act provides that compensation would have been payable on the date of injury because that was the day that Claimant became entitled to wage loss benefits by virtue of his inability to earn wages for the remainder of that day, *see Galizia*, 933 A.2d at 152, because Employer paid Claimant his full wages for the day, the 90-day period began the following day, Monday, March 30, 2015, and ended on June 29, 2015, *see* 34 Pa. Code §121.15(a). Since Employer contested liability within that 90-day period, the Board erred in holding that the NTCP converted to a NCP.

Accordingly, this Court reverses the Board's order.

PATRICIA A. McCULLOUGH, Judge

Judge Simpson concurs in result only.
Judge Fizzano Cannon did not participate in this decision.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Valley Stairs and Rails,         :
           Petitioner       :
                             :   No.  1100 C.D. 2017
          v.               :
                             :
Workers' Compensation Appeal   :
Board (Parsons),            :
           Respondent     :

## ***ORDER***

AND NOW, this 24th day of January, 2019, the order of the Workers' Compensation Appeal Board is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge

Valley Stairs and Rails,          :
                 Petitioner    :
                                    :
           v.                 :
                                    :
Workers' Compensation Appeal Board :
(Parsons),                     :   No. 1100 C.D. 2017
                 Respondent   :   Argued: April 11, 2018

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge

CONCURRING OPINION BY
JUDGE COVEY                      FILED:  January 24, 2019

       I agree with the Majority's conclusion that "[s]ince [Valley Stairs and Rails (]Employer[)] contested liability within th[e statutorily-required] 90-day period, the [Workers' Compensation (WC) Appeal Board (]Board[)] erred in holding that the [notice of temporary compensation payable (]NTCP[)] converted to a [notice of compensation payable (]NCP[)]." Majority Op. at 13. I also agree that "[a]ccordingly, this Court [should] reverse[] the Board's order." *Id.* However, I disagree that "under *Galizia* [*v. Workers' Compensation Appeal Board (Woodloch Pines, Inc.)*, 933 A.2d 146 (Pa. Cmwlth. 2007)], this Court clarified that the triggering date for the 90 days is the date when a claimant becomes entitled to compensation, **irrespective of whether he has received benefits for that day**." Majority Op. at 11 (emphasis added).

       The issue before the Workers' Compensation Judge (WCJ) was whether penalties should be assessed against Employer for stopping payment of Gary Parsons'

[Claimant] WC benefits after its NTCP converted to an NCP. The WCJ determined that because the temporary compensation payment and the NTCP established that Claimant's disability commenced on March 30, 2015, Employer timely filed its notice of compensation denial (NCD) and notice stopping temporary compensation payable (NSTCP). The Board reversed the WCJ's decision concluding that the date of injury was the date of disability since Claimant suffered a loss of earning power. I would reverse the Board's order because *Galizia*, the case relied upon by the Board and the Majority, supports the WCJ's decision.

Claimant alleged that he was injured while working on March 27, 2015. On April 10, 2015, Employer's WC insurer issued Claimant a check for the WC benefit period of March 30, 2015 through April 12, 2015. *See* Certified Record (C.R.) at item 17. On April 13, 2015, Employer issued an NTCP stating the "[n]inety-day period begins on 3/30/2015 and ends on 6/27/2015." C.R. at item 15. On June 27, 2015, Employer filed its NCD.[1] *See* C.R. at item 15. On June 29, 2015, Employer issued its NSTCP.[2] *See* C.R. at item 15. On June 29, 2015, the WC Bureau (Bureau) issued a Notice of Conversion of Temporary Compensation Payable to Compensation Payable, stating: "The 90-day period has expired on this claim and the Employer[] has not filed a [NSTCP]. Therefore, the Employer[] has accepted liability for your claim." *See* C.R. at item 15.

---

[1] The Board pointed out that although the NCD was dated June 27, 2015, it was "deemed filed on June 28, 2015, the date [o]n which [it was] electronically received by the [WC] Bureau." Board Dec. at 5 n.4. Further, Employer's insurance claims adjuster Melissa Tschopp (Tschopp) represented in an affidavit that she uploaded the NCD on June 28, 2015. *See* C.R. at item 20.

[2] The Board noted that although the NSTCP was dated June 29, 2015, it was "deemed filed on June 28, 2015, the date [o]n which [it was] electronically received by the [WC] Bureau." Board Dec. at 5 n.4. Further, Tschopp represented in an affidavit that although the NSTCP shows it was filed on June 29, 2015, she uploaded it on June 28, 2015. *See* C.R. at item 20.

Section 406.1 of the Workers' Compensation Act (Act)[3] provides:

(a) The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a[n] [NCP] as provided in [S]ection 407 [of the Act] or pursuant to a[n] [NTCP] as set forth in subsection (d), on forms prescribed by the [D]epartment [of Labor and Industry (Department)] and furnished by the insurer. . . .

. . . .

(d)(1) In any instance where an employer is uncertain whether a claim is compensable under this [A]ct or is uncertain of the extent of its liability under this [A]ct, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a[n] [NTCP] as prescribed by the [D]epartment.

(2) The [NTCP] shall be sent to the claimant and a copy filed with the [D]epartment and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the [NTCP]. The [D]epartment shall, upon receipt of a[n] [NTCP], send a notice to the claimant informing the claimant that:

. . . .

(ii) **the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation**; and

. . . .

(5)(i) If the employer ceases making payments pursuant to a[n] [NTCP], a notice in the form prescribed by the [D]epartment shall be sent to the claimant and a copy filed with the [D]epartment, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1.

. . . .

> (6) **If the employer does not file a notice under paragraph (5) within the ninety-day period during <u>which temporary compensation is paid or payable</u>, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to a[n] [NCP].**

77 P.S. § 717.1 (bold and underline emphasis added).

> In *Galizia*, this Court held:

> [T]he Act is unambiguous. Section 406.1(d)(2)(ii) of the Act, 77 P.S. § 717.1(d)(2)(ii), is key. It simply provides that a claimant is entitled to a maximum of ninety days of compensation. Section 406.1(d)(6) of the Act, 77 P.S. § 717.1(d)(6), provides that if the employer does not file a[n] [NSTCP] within the ninety[-]day period for which **temporary compensation is paid or payable**, the employer shall be deemed to have admitted liability and the [NTCP] shall be converted to a[n] [NCP].

*Galizia*, 933 A.2d at 152 (emphasis added). Accordingly, the *Galizia* Court ruled that "the first day for which [the c]laimant received compensation was . . . his first day of disability." *Id.*

Respectfully, the Majority misconstrues the *Galizia* Court's holding by ignoring the above-quoted reference to "the first day for which [the c]laimant received compensation." *Id.* Significant in *Galizia* are the remand hearing's stipulated facts. Specifically,

> [t]he parties presented a stipulation of facts which stated that [the e]mployer's insurer, NorGuard, issued the first installment check dated February 10, 2003[] to cover the period from January 31, 2003[] through February 13, 2003, **and that NorGuard issued a check dated March 19, 2003**[] **to cover the period from January 6, 2003**[] **through January 30, 2003**. NorGuard also issued checks to cover the period from February 14, 2003[] through April 28, 2003.

*Id.* at 148 (emphasis added). Thus, at the time the first check was *paid*, the second check which covered the earlier time period was still *payable*. However, after the second check was issued, that compensation was also *paid*. Consequently, although "[p]ursuant to the NTCP, payments commenced January 31, 2003 [and] . . . '[m]edical documentation supports disability effective 1/31/03[,]'" *id.* at 147, this Court held that the disability began on January 6, 2003, **because that was the first date the claimant received compensation therefor**.

In the instant case, because Claimant's first day out of work and temporary compensation was paid March 30, 2015, that is the date of Claimant's disability for purposes of Section 406.1 of the Act. Accordingly, the Board erred by reversing the WCJ's decision.

_____
ANNE E. COVEY, Judge

Judge Simpson joins in this concurring opinion.