**Chris GUMM, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (J. Allan STEEL), Respondent**

**J. Allan Steel Company and Old Republic Insurance Services, Petitioners**

v.

**Workers' Compensation Appeal Board (Gumm), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 26, 2007.
Decided Jan. 28, 2008.

Sara J. Klein, Pittsburgh, for designated petitioner, Chris Gumm.

Gerald R. O'Brien, Jr., Pittsburgh, for respondent, J. Allan Steel Company.

P. Timothy Kelly, Scranton, for amicus curiae, Pennsylvania Trial Lawyers Association.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In these workers' compensation appeals, Chris Gumm (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) insofar as it reversed an award of a penalty and unreasonable contest attorney fees against J. Allan Steel Company, and its workers' compensation carrier, Old Republic Insurance Services (collectively, Employer). Claimant asserts Employer's failure to file an appropriate document accepting his work injury as compensable constituted an unreasonable contest of his claim petition and violated the Workers' Compensation Act (Act).[1]

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

In its cross petition for review, Employer asserts the Board erred in upholding the order insofar as it granted Claimant's claim petitions and awarded him ongoing total disability benefits. Specifically, Employer asserts the Board erred in holding the Workers' Compensation Judge's (WCJ's) decision satisfied the "reasoned decision" requirement of Section 422(a) of the Act, 77 P.S. § 834, and the WCJ's determination that Claimant sustained a disabling work injury is not supported by substantial evidence.

For the following reasons, we affirm.

## I. Background

### A. Work Injury

Claimant worked for Employer as a crane man. On February 3, 2003, Claimant sustained a work injury when his right foot became lodged between two steel beams. He wrenched his right ankle and noticed immediate pain and swelling. Claimant was treated at a local hospital. Thereafter, Employer referred him to its panel physician, an orthopedic specialist who diagnosed a right ankle sprain. On February 17, Employer issued a notice of temporary compensation payable (NTCP) for a right ankle sprain. *See* Reproduced Record (R.R.) at 14a.

Thereafter, on April 15, 2003, Dr. Jeffrey N. Kahn, an *orthopedic surgeon* (Employer's First Physician), examined Claimant. He believed Claimant's work accident temporarily aggravated a pre-existing condition. Employer's First Physician released Claimant to modified duty as of April 15, and to full duty as of April 21.

On April 21, Employer, pursuant to Section 406.1 of the Act,[2] simultaneously filed a notice stopping temporary compensation and a notice of compensation denial (NCD). *See* R.R. at 11a–13a. The notice

stopping temporary compensation indicated Employer decided not to accept liability for Claimant's injury and advised him to file a claim petition. *Id.* at 13a. On the NCD, Employer placed an "x" next to the following reasons on the Workers' Compensation Bureau's NCD form for declining to pay Claimant workers' compensation benefits:

4. *Although an injury took place, the employee is not disabled as a result of this injury within the meaning of the [Act].*

. . . .

6. Other good cause. . . . CLAIMANT HAS BEEN RELEASED TO FULL–DUTY AS OF 4/21/03. INSURED IS DOWNSIZING DUE TO ECONOMIC FACTORS; THUS NO JOB FOR CLAIMANT TO RETURN TO. TEMPORARY TOTAL DISABILITY BENEFITS ARE BEING DISCONTINUED BASED ON FULL–DUTY RELEASE.

*Id.* at 11a (emphasis added). The first reason, number 4, is one of five pre-printed reasons on the NCD form. The second reason, number 6, carries the pre-printed statement "Other good cause" and requires a full explanation in the space below.

### B. Claimant Petitions

In May 2003, Claimant filed a claim petition (first claim petition) alleging he sustained a work injury in the nature of a right ankle sprain and aggravation of previously asymptomatic right ankle degenerative joint disease as a result of the February 2003 incident. R.R. at 3a–4a. Claimant later orally amended this petition to include additional claims for traumatic and post-traumatic arthritis secondary to the injury. In February 2004,

---

**2.** Added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 717.1.

Claimant filed a second claim petition alleging the same disabling condition (aggravation of asymptomatic right ankle arthritis) not as a result of a discrete work injury but as the result of repetitive and cumulative trauma due to climbing, and walking on concrete and gravel. *Id.* at 7a–8a. Employer filed timely answers denying Claimant's allegations.

In May 2004, Claimant filed a penalty petition alleging Employer violated Section 406.1 of the Act by improperly filing an NCD, as opposed to a notice of compensation payable (NCP), where the medical evidence indicated a compensable injury. Claimant also requested a 50% penalty on unpaid compensation from the date of the injury to the date of the penalty petition. *Id.* at 9a–10a.

### C. Evidence

Claimant testified on his own behalf. Employer later cross-examined him by deposition. Claimant's crane man duties included moving steel in and out of buildings and loading it on trucks and train cars. At the time of the accident, Claimant's toe caught on a steel beam, which violently bent his right foot upward. He immediately noticed pain and swelling, and was transported to a hospital. Although Claimant complained of a broken ankle, the hospital x-rays showed no fracture.

Claimant acknowledged pre-existing right leg problems. He fractured his tibia and fibula in a sledding accident at age 17. He also suffered a work-related right knee injury in 1999. However, Claimant denied having right ankle problems prior to the February 2003 accident.

In addition, Claimant submitted the deposition testimony of Dr. Gerald W. Pifer (Claimant's Physician), a board-certified orthopedic surgeon. In May 2003, Claimant's Physician examined Claimant concerning his right ankle injury, reviewed his medical records and took a history of the work accident. Claimant's Physician diagnosed Claimant's condition as a chronic sprain of his right ankle, and traumatic joint disease of the right ankle. He opined the February 2003 incident aggravated a pre-existing traumatic arthritis of the ankle. Although the degenerative arthritis began as early as 2000, the February 2003 incident created Claimant's current symptoms and his disability. Claimant's Physician advised Claimant he could not perform his pre-injury job.

Employer submitted deposition testimony from two board-certified orthopedic surgeons. As noted above, Employer's First Physician opined Claimant's work-related ankle injury temporarily aggravated a pre-existing, non-work-related, degenerative condition. He released Claimant to modified duty as of April 15; and to full duty as of April 21, 2003.

Dr. Jon B. Tucker (Employer's Second Physician), examined Claimant's right ankle in October 2003. He opined Claimant suffered a mild ankle sprain as a result of the February 2003 incident, which fully resolved as of his examination. Employer's Second Physician also observed Claimant had pre-existing degenerative ankle problems. He testified Claimant's work-related ankle sprain did not play any role in causing his ongoing ankle problems.

### D. WCJ's Decision

In February 2006, the WCJ issued a decision that granted Claimant's claim petitions and awarded him ongoing total disability benefits, effective from the date of injury. *See* Conclusions of Law (C.L.) Nos. 2–6. The WCJ also determined Employer failed to present a reasonable con-

test of Claimant's first claim petition.[3] C.L. No. 11. In particular, the WCJ held Employer did not present a reasonable contest as to the occurrence of Claimant's work-related right ankle injury. *Id.* Accepting Claimant's counsel's rate and itemization of legal work in her quantum meruit statement, the WCJ awarded Claimant $14,740 in attorney's fees for work related to the first claim petition.[4] *Id.;* WCJ's Order.

Additionally, the WCJ granted Claimant's penalty petition and imposed a 50% penalty on the unpaid balance of Claimant's compensation. C.L. No. 12. Despite the marking of pre-printed reason number 4 on the NCD form (emphasized above), the WCJ determined Employer violated the Act by failing to file an appropriate document acknowledging Claimant sustained a work-related injury. *Id.*

### E. Board's Decision

Both parties appealed to the Board. Employer argued the WCJ erred in granting Claimant's claim petitions. It asserted the WCJ failed to issue a reasoned decision and the WCJ's determination of continuing disability was not supported by substantial evidence. Employer also argued the WCJ erred in awarding a penalty and unreasonable contest attorney fees. Claimant argued the WCJ erred in failing to award additional penalties and unreasonable contest attorney fees where Em-

ployer stopped temporary compensation absent evidence of full recovery or return to work.

The Board rejected Employer's reasoned decision and substantial evidence challenges. However, the Board reversed the WCJ's award of a penalty and unreasonable contest attorney fees. The parties again appealed.[5]

### II. Issues

Claimant presents three issues. He asserts the Board erred in reversing the WCJ's award of unreasonable contest attorney fees where Employer, absent any supporting medical or lay evidence, stopped temporary compensation and issued an NCD. Claimant also asserts the Board erred in reversing the award of a penalty for Employer's failure to issue an appropriate document accepting Claimant's work injury. In addition, Claimant asserts the Board erred in denying his appeal of the WCJ's decision not to award additional unreasonable contest fees and penalties for Employer's revocation of the NTCP.

The Pennsylvania Trial Lawyers Association, as *amicus curiae,* also asserts the Board erred in overturning the WCJ's penalty and unreasonable contest attorney fees award where Employer failed to ac-

---

3. The WCJ noted Claimant limited his amended request for unreasonable contest attorney's fees to his first claim petition. Finding of Fact (F.F.) No. 7.

4. Claimant's counsel's Amended Attorney's Fee Exhibit (09/15/05), admitted as Claimant's Ex. No. 15, identified items of work performed on the first claim petition or on both claim petitions, and indicates a total fee for these items of $14,740.00. This exhibit also identified items and fees related solely to the second claim petition and penalty petition.

5. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.),* 873 A.2d 25 (Pa.Cmwlth.2005). Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. *Id.*

knowledge the compensability of Claimant's work injury.

Employer presents two issues. It asserts the Board erred in holding the WCJ's decision was reasoned inasmuch as the WCJ failed to articulate an objective basis for his credibility determinations regarding the medical evidence. Employer further asserts the WCJ's conclusion Claimant suffered a disabling work injury and continuing disability is not supported by substantial evidence.

## III. Employer's Appeal

### A. Reasoned Decision

■ We address Employer's appeal first. It argues the Board erred in affirming the WCJ's decision because it fails Section 422(a)'s reasoned decision requirements. To satisfy Section 422(a), a WCJ's decision must permit adequate appellate review. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 667, 916 A.2d 635 (2007). "Section 422(a) does not require the WCJ to discuss all of the evidence presented." *Id.* at 194, n. 4. "The WCJ is only required to make the findings necessary to resolve the issues raised by the evidence and relevant to the decision." *Id.* "[T]he purpose of a reasoned decision is to spare the reviewing court from having to *imagine* why the WCJ believed one witness over another." *Id.* at 196 (citation omitted).

■ Nonetheless, "[w]here medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." *Id.* at 194. To allow effective appellate review, the WCJ must articulate an objective basis for the credibility determination. *Id.* at 194–95. Although there are countless objective factors that may support a credibility determination, these factors must be identified and enunciated. *Id.*

■ "However, Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." *Id.* at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Id.* Moreover, "[a] reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision." *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21, 26 (Pa. Cmwlth.2006).

Citing *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 574 Pa. 61, 828 A.2d 1043 (2003), Employer contends the WCJ failed to adequately explain why he credited Claimant's Physician's testimony, and why he rejected or discredited competent, conflicting testimony from Employer's two medical experts. Employer asserts the WCJ merely summarized the medical experts' testimony; he articulated no objective basis for deeming the opinions of Claimant's Physician "more logical, credible and convincing" than those of Employer's two medical experts.

■ Contrary to Employer's assertion, the WCJ clearly articulated objective bases for his credibility determinations. As to the injury itself, the WCJ contrasted the severity of the injury described by Claimant's Physician with that described by Employer's medical experts. Finding of Fact (F.F.) No. 23. He found the more severe description by Claimant's Physician more believable. This reason is confirmed in a review of the medical testimony and in a review of the accepted testimony of Claimant as to the account of the incident and his symptoms. F.F No. 22.

Regarding the duration of Claimant's disability, the WCJ also articulated an objective basis for his credibility determination. He rejected Employer's First Physician's opinion that Claimant could return to his full duty position as of April 21, 2003 because the doctor rendered this opinion based on his April 15 examination at which time Claimant remained symptomatic and could only return to modified duty. F.F. No. 24.

The WCJ's decision meets the reasoned decision requirement of Section 422(a) of the Act. *Daniels; Dorsey.*

### B. Substantial Evidence

■ Employer next asserts the WCJ's decision is not supported by substantial evidence. Essentially, Employer argues the WCJ relied on inaccurate and inconsistent testimony from Claimant and his physician regarding Claimant's pre-existing condition.

■ The WCJ determined Claimant sustained a work injury in the nature of a chronic ankle sprain that aggravated his pre-existing ankle joint disease and degenerative arthritis. It is well settled that "an employer is liable for an employee's disability when that disability is caused by a combination of work-related and non-work-related factors, so long as the work-related cause is a substantial contributing factor to the disability." *Martin v. Workers' Comp. Appeal Bd. (Red Rose Transit Auth.),* 783 A.2d 384, 389 (Pa.Cmwlth.2001).

The WCJ accepted Claimant's testimony regarding his work history, his medical treatment history and the February 2003 incident as "straight-forward, credible and convincing." F.F. No. 22. Claimant testified he had no problems with his right ankle prior to the February 2003 work injury. F.F. No. 8f; Notes of Testimony (06/19/03) at 20–21; R.R. at 35a–36a.

The WCJ found Claimant's Physician's testimony competent and unequivocal. C.L. No. 1. "Medical evidence is unequivocal if the medical expert, after providing a foundation, testifies in his [or her] medical opinion he [or she] thinks the facts exist." *Martin,* 783 A.2d at 389. In determining whether medical testimony is unequivocal, we must view medical testimony as a whole, not as isolated expressions. *Id.*

Claimant's Physician diagnosed Claimant's February 2003 work injury as a chronic right ankle sprain that aggravated a pre-existing traumatic arthritis of the ankle. F.F. Nos. 10d-e; Claimant's Physician's Depo. at 28–30; R.R. at 201a–03a. At his May 2003 examination, Claimant's Physician advised Claimant he could not perform his regular job. F.F. No. 10d; Claimant's Physician's Depo. at 18; R.R. at 191a.

Moreover, on cross-examination, Claimant's Physician succinctly explained that Claimant's February 2003 work injury aggravated his pre-existing condition and rendered him incapable of performing his pre-injury job:

Q. So you saying his ankle was fine in July of 2000?

A. I am not saying it was fine. Okay. *But he was working, sir. He was working as a craneman.* He was working on concrete. He was climbing. He was carrying things. *He was able to tolerate the symptoms, if he had symptoms of his ankle, the day before he got hurt. Then he got hurt. And his symptoms got severe enough that he wasn't able to continue to work.* His ankle has gone to pot. Now he is facing two very major surgical procedures.

*Id.* at 90; R.R. at 262a–63a (emphasis added).

Viewing Claimant's Physician's testimony in its entirety, we find he unequivocally opined Claimant's February 2003 work in-

jury aggravated his pre-existing degenerative ankle condition and rendered him incapable of performing his pre-injury crane man job. *Martin.* The WCJ accepted Claimant's Physician's description of Claimant's work injury as an "acute traumatic severe dorsiflexion," which "resulted in an aggravation of [Claimant's] pre-existing right ankle joint disease and degenerative arthritis." F.F. No. 23. The WCJ's decision is supported by competent medical evidence. Thus, we discern no error in the WCJ's grant of Claimant's claim petitions.

## IV. Claimant's Appeal

### A. Reasonable Contest

■■■ Claimant asserts the Board erred in reversing the WCJ's award of attorney fees under Section 440 of the Act, 77 P.S. § 996, because Employer failed to present a reasonable contest as to the occurrence of Claimant's work injury.[6] In overturning the WCJ's unreasonable contest award, the Board determined Employer's First Physician's testimony, if found credible, could have established Claimant was not disabled.[7] Board Op. at 9.

Asserting the Board erred, Claimant cites several decisions holding an employer liable for unreasonable contest attorney fees if it fails to demonstrate a reasonable basis for denying the occurrence of a compensable injury. *See Jordan* (unreasonable contest of claim petition where the employer did not issue an NCP even though it had no fact witnesses or medical evidence that the claimant did not suffer a work injury; rather, the employer disputed the claimant's disability during periods alleged in his claim petition); *Johnstown Hous. Auth. v. Workers' Comp. Appeal Bd. (Lewis),* 865 A.2d 999 (Pa.Cmwlth.2005) (unreasonable contest of claim petition where the employer, at the time it filed its answer, had no basis to dispute occurrence of work injury, even though parties disagreed as to length of the claimant's disability); *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison),* 819 A.2d 164 (Pa.Cmwlth.2003) (unreasonable contest of claim petition where the employer did not issue an NCP even though it knew the claimant suffered a work injury, which forced the claimant to litigate the occurrence of work injury); and *Lemansky v. Workers' Comp. Appeal Bd. (Hagan Ice*

---

**6.** Whether to award unreasonable contest attorney's fees is a question of law reviewable by the Board and this Court. *Jordan v. Workers' Comp. Appeal Bd. (Phila.Newspapers, Inc.),* 921 A.2d 27 (Pa.Cmwlth.2007). "Section 440(a) of the Act, 77 P.S. § 996(a), provides that where a claimant succeeds in a litigated case reasonable counsel fees are awarded against the employer, as a cost, unless the employer meets its burden of establishing facts sufficient to prove a reasonable basis for the contest." *U.S. Steel Corp. v. Workers' Comp. Appeal Bd. (Luczki),* 887 A.2d 817, 820 (Pa.Cmwlth.), *appeal denied,* 587 Pa. 726, 899 A.2d 1125 (2006). "A reasonable contest is established when medical evidence is conflicting or susceptible to contrary inferences, and there is an absence of evidence that an employer's contest is frivolous or filed to harass a claimant." *Id.* The employer bears the burden of proving a reasonable ba-

sis for contesting liability. *Dep't of Corr. v. Workers' Comp. Appeal Bd. (Clark),* 824 A.2d 1241 (Pa.Cmwlth.2003).

**7.** Specifically, in Conclusion of Law No. 11, the WCJ stated:

This Judge concludes that [Employer's] contest in this matter was unreasonable.... This Judge finds it significant that [Employer] did not present a reasonable contest that there was an injury to [Claimant's] right ankle on February 3, 2003 throughout the litigation, but they primarily contested the amount of disability [Claimant] became entitled to as a result of that injury. Even though [Employer] filed [an NTCP], [it] stopped that from becoming final and [it] required [Claimant] to litigate and prove that he in fact had a work-related injury on February 3, 2003. (Citation omitted.)

*Cream Co.)*, 738 A.2d 498 (Pa.Cmwlth. 1999) (unreasonable contest of claim petition where the employer never debated occurrence of the claimant's work injury; insurer's internal policy not to acknowledge liability for compensation in "medical only" cases did not provide a reasonable basis not to acknowledge occurrence of work injury).

Conversely, in *Brutico v. Workers' Compensation Appeal Board (U.S. Airways)*, 866 A.2d 1152 (Pa.Cmwlth.2004), *appeal denied,* 584 Pa. 679, 880 A.2d 1240 (2005), we held an employer engaged in a reasonable contest even though it acknowledged the claimant sustained a work injury and yet failed to issue a "medical only" NCP. In *Brutico* we reasoned that the claimant needed to hire an attorney regardless of whether the employer filed an NCP because the nature of her injuries changed from the originally claimed cervical, thoracic and lumbar strains to newer injuries including a disc herniation and upper and lower back pain radiating into her legs.

Given the particular circumstances here, we find our rationale in *Brutico* persuasive. In the present case, a genuine dispute existed as to the nature of Claimant's work injury. The dispute over the severity of the injury description and the extent of disability was reflected in the WCJ's credibility findings, discussed above. Thus, Employer's physicians described Claimant's work injury as a mild ankle sprain and a temporary aggravation of a pre-existing degenerative condition. Full recovery was achieved as of April 21, 2003.

Conversely, Claimant's first claim petition alleged a specific work injury which aggravated an asymptomatic prior condition, rendering Claimant permanently disabled. Claimant's second claim petition alleged a different cause, cumulative work trauma which aggravated an asymptomatic prior condition, rendering Claimant permanently disabled. Additionally, Claimant's Physician diagnosed Claimant's specific work injury as a chronic ankle strain which prevented him from returning to his pre-injury position. In other words, Claimant alleged a substantially different, more severe and more disabling injury than diagnosed by Employer's physicians.

Consequently, even assuming Employer filed an NCP that accepted a work-related mild ankle strain and temporary aggravation of a pre-existing degenerative condition, Claimant would have needed to hire an attorney to litigate the more severe and permanent injury. Therefore, we conclude Employer presented a reasonable contest as to the nature of Claimant's work injury. *Brutico.*

For this reason, we affirm the Board's reversal of the WCJ's unreasonable contest attorney's fees award.

## B. Penalty Petition

In this argument, Claimant's asserts Employer's conduct merited imposition of a penalty. Claimant maintains Employer violated the Act by failing to file an appropriate document accepting that Claimant sustained a compensable injury on February 3, 2003. Section 435(d) of the Act[8] authorizes a WCJ to impose penalties

---

8. Section 435(d), 77 P.S. § 991(d), provides: The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten percentum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to fifty percentum in cases of unreasonable or excessive delays. Such penalty shall be payable to the

for violations of the Act. *Fearon v. Workers' Comp. Appeal Bd. (Borough of Ashland)*, 827 A.2d 539 (Pa.Cmwlth.2003). The assessment of penalties, and the amount of penalties imposed are matters within the WCJ's discretion. *Id.*

However, "a violation of the Act or its regulations must appear in the record for a penalty to be appropriate." *Shuster v. Workers' Comp. Appeal Bd. (Pa. Human Relations Comm'n)*, 745 A.2d 1282, 1288 (Pa.Cmwlth.2000). "No penalty may be imposed under [Section 435] absent proof of a violation of the Act or the rules of the department or board." *Spangler v. Workmen's Comp. Appeal Bd. (Ford)*, 145 Pa.Cmwlth.56, 602 A.2d 446, 448 (1992). Further, a claimant who files a penalty petition bears the burden of proving a violation of the Act occurred. *Shuster.* If the claimant meets his or her initial burden of proving a violation, the burden then shifts to the employer to prove it did not violate the Act. *Id.*

In Conclusion of Law No. 12, the WCJ stated:

> This Judge concludes [Employer] violated Section 435 of the [Act] and a penalty in the amount of 50% of [Claimant's] award should be imposed against [it]. This Judge is not aware of a provision in the [Act] that would prohibit [Employer] from first filing [an NTCP] and then filing a separate document within the time limit stopping the [NTCP], without a good reason. However, [Claimant] also argued successfully that [Employer] violated the [Act] by failing to file a permanent document of record to accept that [Claimant] sustained a work related injury on February 3, 2003. That would not have prevented [Employer] from still contesting the amount of disability [Claimant] became entitled to, but it

would have entitled [Claimant to] reasonable and necessary related medical treatment for his February 3, 2003 injury without litigating that matter. (Citations omitted).

WCJ Op. at 11–12.

In overturning the WCJ's penalty award, the Board held the WCJ erred in awarding a penalty because Employer, in stopping Claimant's temporary compensation and denying liability for his injury, complied with the requirements of Section 406.1 of the Act. *See* Board Op. at 8. We agree with the Board.

Here, Claimant asserts the WCJ properly imposed a penalty because Employer violated the Act by failing to conduct a reasonable investigation at the time it stopped temporary compensation and issued the NCD. In the alternative, Claimant asserts Employer conducted a reasonable investigation but acted contrary to its results.

### 1. *Spangler* and *Geiger*: Prompt Investigation

In support, Claimant cites *Spangler* and *Geiger v. Workmen's Comp. Appeal Bd. (Circle Fine Art Corp.)*, 654 A.2d 19 (Pa.Cmwlth.1994). In *Spangler*, penalties were imposed where the employer did not file an NCP until approximately 11 months after the claimant's injury. In upholding the penalty, we noted the employer's contest of the claim did not relieve it of its duty under Section 406.1(a) to promptly investigate the claimant's injury. In *Geiger*, we upheld an award of penalties where the employer failed to investigate the claimant's injury prior to receiving a statement from the claimant's doctor, five months after the injury, that claimant's injury was work-related. In that case, we recognized that Section 406.1 requires an

same persons to whom the compensation is payable.

employer to take some affirmative action to investigate a reported work injury within a reasonable time period.

*Spangler* and *Geiger* are inapplicable here. As discussed above, Claimant's work injury occurred on February 3, 2003. Shortly thereafter, Employer's panel physician examined Claimant. On February 17, Employer issued a NTCP for a right ankle sprain. Pursuant to the NTCP, Claimant received temporary total disability benefits beginning February 4. Consequently, Employer here did not violate the "prompt investigation" requirement of Section 406.1(a).

Claimant and Trial Lawyers Association also contend our more recent decision in *Jordan,* where penalties were awarded based on the employer's failure to accept an injury despite acknowledging a work-related disability in an NCD, involves a similar fact pattern and is therefore controlling. We disagree.

### 2. *Jordan:* Improper Use of NCD

In *Jordan,* the claimant suffered work-related injuries. However, the claimant did not suffer a wage loss because of a salary continuation program. A month after the injury, the employer issued a NTCP describing the injury. A month later, the claimant returned to work, and the employer stopped temporary compensation and issued an NCD. As grounds for the denial, the employer indicated " '6. Other good cause. . . . There was compensable lost time  . . .  until return to work. . . .' " *Jordan,* 921 A.2d at 30–31. In essence, the employer confirmed a compensable injury occurred, but noted there was no compensable lost time because the claimant received salary continuation until he returned to work.

The claimant in *Jordan* continued to experience problems and petitioned for benefits. He also petitioned for penalties,

asserting the employer violated the Act by failing to issue an NCP within 21 days of the injury. The WCJ awarded the claimant penalties on the basis the employer violated the Act when it used an NCD rather than a NCP to acknowledge the occurrence of a compensable injury. The compensation authorities held this to be improper use of an NCD. This Court affirmed, because the salary continuation program did not justify a refusal to acknowledge an otherwise compensable injury.

### 3. *Gereyes:* Proper Use of NCD

▮ In contrast, where an employer properly issues an NCD to deny liability, a violation of the Act does not occur. *Gereyes v. Workers' Comp. Appeal Bd. (New Knight, Inc.),* 793 A.2d 1017 (Pa.Cmwlth. 2002). In *Gereyes,* the employer issued an NTCP for the claimant's work-related wrist injuries. Sometime thereafter, the claimant returned to work with a wage loss. The employer stopped temporary compensation and issued an NCD. In *Gereyes,* as in the present case, the employer placed an "x" next to pre-printed reason No. 4 on the Bureau's NCD form, thereby disputing "the claim on the ground that 'the employee is not disabled as a result of this injury within the meaning of the [Act].' " *Id.* at 1018 (footnote omitted).

The claimant in *Gereyes* responded with a penalty petition alleging the employer illegally reduced and suspended his benefits. The WCJ determined the employer violated the Act in part by issuing an illegal denial inasmuch as it had no factual or medical evidence that the claimant was not disabled when it stopped temporary compensation. The Board reversed the penalty award on the ground the WCJ misconstrued Section 406.1 and the em-

ployer properly followed the procedures authorized by statute.[9]

On appeal, this Court, speaking through then President Judge Colins, held the employer did not violate the Act by controverting the claim. To that end, we recognized the employer complied with Section 406.1(d)(5) by issuing an NCD indicating the grounds on which it disputed the claim.

### 4. Discussion

■ In *Jordan,* a penalty was upheld for failure to accept an acknowledged injury after issuance of a NTCP. In *Gereyes,* however, a penalty for failure to accept an acknowledged injury after issuance of a NTCP was overturned. The basis for the different results in these two cases is the reason given when the claim was denied.

In *Jordan* the injury was denied not for one of the five pre-printed reasons on the form, but for "other good cause." *See* Section 406.1(c), 77 P.S. § 717.1(c) (insurer controverting right to compensation shall notify employee on form prescribed by the department). Ultimately, neither the compensation authorities nor this Court found the employer's specified "other cause" for denial good. In contrast, in *Gereyes* the employer assigned as the grounds for denial one of the five pre-printed options on the form: no disability as a result of the injury. This Court determined such a reason is a valid ground for refusing to accept an acknowledged injury after issuance of a NTCP.

In the present case, the circumstances are more similar to those in *Gereyes* than *Jordan.* In particular, Employer here gave as one of the grounds for refusing to accept the claim the same reason as was approved in *Gereyes:* "the employee is not

---

**9.** Sections 406.1(c),(d) of the Act, 77 P.S. §§ 717.1(c),(d), authorize an employer seeking to dispute an uncertain claim to pay temporary compensation without admitting liability. Section 406.1(d) also provides the procedure for stopping temporary compensation. Specifically, these provisions state:

(c) If the insurer controverts the right to compensation it shall promptly notify the employe or his dependent, on a form prescribed by the department, stating the grounds upon which the right to compensation is controverted and shall forthwith furnish a copy or copies to the department.

(d)(1) In any instance where an employer is uncertain whether a claim is compensable under this act or is uncertain of the extent of its liability under this act, the employer may initiate compensation payments without prejudice and without admitting liability pursuant to a notice of temporary compensation payable as prescribed by the department.

(2) The notice of temporary compensation payable shall be sent to the claimant and a copy filed with the department and shall notify the claimant that the payment of temporary compensation is not an admission of liability of the employer with respect to the injury which is the subject of the notice of temporary compensation payable. The department shall, upon receipt of a notice of temporary compensation payable, send a notice to the claimant informing the claimant that:

. . . .

(ii) the payment of temporary compensation entitles the claimant to a maximum of ninety (90) days of compensation; and

. . . .

(4) Payments of temporary compensation may continue until such time as the employer decides to controvert the claim.

(5)(i) If the employer ceases making payments pursuant to a notice of temporary compensation payable, a notice in the form prescribed by the department shall be sent to the claimant and a copy filed with the department, but in no event shall this notice be sent or filed later than five (5) days after the last payment.

(ii) This notice shall advise the claimant, that if the employer is ceasing payment of temporary compensation, that the payment of temporary compensation was not an admission of liability of the employer with respect to the injury subject to the notice of temporary compensation payable, and the employe must file a claim to establish the liability of the employer.

disabled as a result of this injury...." As this reason was held to be good cause in *Gereyes*, we discern no error on the part of the Board in reaching the same conclusion here.

As in *Gereyes*, Employer here did not "misuse" an NCD. Rather, Employer complied with the procedures required by the Act. Employer used the NCD to controvert Claimant's claim on the basis that disability did not result from the injury. This is consistent with Employer's position discussed above, that the cause of Claimant's problems was not the work incident but rather the pre-existing ankle problems.

Employer's reference of another ground for declining liability does not alter this conclusion. As noted before, Employer also gave as a reason "other good cause," referencing Claimant's release for full duty, but the elimination of the position as a result of downsizing. This ground for declining liability would be insufficient by itself; however, it does not conflict with a contest based on causation of disability. Instead, it explains the timing of the decision to end temporary, non-binding compensation and issue a formal denial. Therefore, there is no basis to conclude this additional reason transforms an otherwise lawful act into an unlawful one.

Also warranted is some discussion of the WCJ's rationale for awarding a penalty. Apparent from the quote earlier in this opinion, the WCJ determined a penalty was warranted because the refusal to accept liability for the injury forced the Claimant to litigate entitlement to necessary related medical treatment. The WCJ, however, did not identify any medical treatment denied, did not identify any medical treatment delayed, and did not identify any medical treatment pending in the foreseeable future. *See* F.F. 10e, WCJ Op. at 5. More importantly, since Employer's contest focused on causation, it is unclear how litigation could have been avoided for any significant medical treatment.

Further, the WCJ stated that Employer violated Section 435 of the Act. That provision generally permits assessment of penalties for an employer's violation of duties. It does not, however, specify any discrete responsibilities of an employer. Nowhere does the WCJ identify the statutory or regulatory provision that *requires* an employer, when an injury occurs, to file a "permanent document of record to accept that [a claimant] sustained a work related injury...." C.L. No. 12, WCJ Op. at 11–12. Rather, Section 406.1(d) of the Act, 77 P.S. § 717.1(d), permits an employer, in cases where it is uncertain as to the compensability of a claim or the extent of its liability under the Act, to file an NTCP without admitting liability under an NCP. The WCJ's failure to specify the statutory or regulatory source of the violated duty also supports our conclusion that the WCJ erred.

For these reasons, we affirm the Board's reversal of the WCJ's penalty award.[10]

### ORDER

AND NOW, this 28th day of January, 2008, for the reasons stated in the foregoing opinion, the order of the Workers'

---

10. As a final note, we reject Claimant's assertion the WCJ erred by failing to assess additional penalties and unreasonable contest attorney's fees against Employer because it stopped temporary compensation absent evidence of Claimant's full recovery or return to work. Employer presented a reasonable contest as to the duration of Claimant's disability. Employer's First Physician examined Claimant on April 15, 2003 and released Claimant to return to full duty as of April 21, 2003.

Compensation Appeal Board is **AFFIRMED.**